IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| American Reliable<br>Insurance Company a/s/o<br>Bill Brazzel<br>8655 E. Via De Ventura<br>Scottsdale, AZ 85258-3321 | CIVIL ACTION NO.: |
| Plaintiff,<br>vs. | JURY DEMANDED |
| Laurie Addington<br>104 Villa Circle,<br>Dickson, TN 37055; and | |
| David Brogdon, Esq., as<br>Administrator *Ad Litem* of the<br>Estate of<br>Joshua Michael Perez<br>230 N. Main St.<br>Dickson TN 37055 | |
| Defendants. | |

## COMPLAINT

COMES NOW the Plaintiff, American Reliable Insurance Company ("ARIC") as subrogee of Bill Brazzel ("Brazzel") by and through undersigned counsel and brings this civil action against Laurie Addington ("Addington") and David Brogdon, Esq., as Administrator *Ad Litem* of the Estate of Joshua Michael Perez (hereinafter "Perez"), for its causes of action states as follows:

### PARTIES

1. Plaintiff ARIC is an Arizona Corporation, with a principal place of business at the above captioned address.

2. Defendant Addington is an adult individual and resident and citizen of the State of Tennessee, with a principal residence at the above captioned address.

3. David Brogdon, Esq., a member in good standing of the Tennessee State Bar was duly appointed by the Chancery Court for Dickson County, Tennessee as the Administrator *Ad Litem* of the Perez Estate on January 11, 2021 (see attached Exhibit "A"). Mr. Brogdon has a law practice located at the address noted above.

4. At all times relevant hereto, ARIC was approved to issue policies for real property casualty insurance within the State of Tennessee.

5. At all times relevant hereto, ARIC insured a property owned by Brazzel located at 312 Railroad St. Dickson, Tennessee ("subject property").

6. At all times relevant hereto, Brazzel leased the subject property to Jeffrey Pimer ("Pimer"). See Residential Lease ("Lease"), attached as Exhibit "B".

7. And it is uncontroverted that the attached lease was in effect on November 13, 2019.

8. It is further uncontroverted that no other leases, written or otherwise, exist for the subject property that covers the time period or parties at issue herein.

9. There are no written or oral leases that exist between Brazzel and Defendant Addington and/or Defendant Perez.

10. "Jeffrey Pimer" was the lease's sole named Lessee, and the lease only allowed the subject property to "be used and occupied by Lessee ... as a private dwelling for the Lessee *and family*" (emphasis added). See Exhibit "B".

11. Further, it is believed and therefore averred, that all of the rent checks paid to Brazzel by Pimer, from the inception of the lease to the date of the fire, were written from Pimer's personal checking account with TriStar Bank; and that said account was solely owned by Pimer.

12. It is believed and therefore averred, that at all times relevant hereto, up until November 13, 2019, Defendants Addington and her adult son, Perez, were living at the subject property as guests of Pimer; and they were not paying rent to plaintiff's insured, Brazzel.

13. It is believed and therefore averred, that while Ms. Addington and Mr. Pimer were in a romantic relationship, the two were not married at the time of the fire.

14. Further, it is believed and therefore averred, that Mr. Perez was not related to Mr. Pimer by blood or adoption.

15. Tragically, Mr. Pimer and Mr. Perez lost their lives in the fire at issue.

## JURISDICTION

16. At all times relevant hereto, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 (Diversity of Citizenship).

17. Additionally, the amount in controversy, as noted below, exceeds the Court's jurisdictional floor and the underlying event that gives rise to this action occurred within the jurisdiction of this court.

## STATEMENT OF FACTS

18. As noted above, on or about November 13, 2019, the subject property suffered a fire loss.

19. Said fire caused significant damage to Brazzel's property.

20. Subsequent to the fire, Brazzel submitted an insurance claim with Plaintiff ARIC.

21. As a result of that claim, Plaintiff ARIC paid to, or on behalf, of Brazzel an amount equal to or above $241,972.17.

22. On information and belief, the fire and related damages were caused by the misuse of a kerosene heater by Defendant Addington and Perez (collectively "defendants").

23. Specifically, it is believed and therefore averred that the defendants were using the space heater to heat the inside of subject property (enclosed space) and they were improperly fueling the "kerosene" heater with "gasoline".

24. Moreover, it is believed and therefore averred that the gasoline caused the kerosene heater to malfunction and cause a small fire initially.

25. In response to that fire, it is believed that the defendants attempted to unsuccessfully remove the heater from the inside of the property further spreading the flames and exacerbating the damages.

26. As noted above, pursuant to the contract for insurance, between Brazzel and Plaintiff ARIC, and because of the aforesaid damage, Plaintiff issued payment(s) to, or on behalf of, Brazzel in an amount equal to or above $241,972.17.

27. Under the doctrine of subrogation and pursuant to the aforesaid contract for insurance, Plaintiff ARIC is subrogated to the claims of Brazzel against the defendants named here.

## COUNT I
(vs. Addington and Perez)
*Negligence*

28. Paragraphs 1 – 27 are incorporated by reference here.

29. Defendants owed a duty of care to Plaintiff's insured and all others potentially affected by their failure to exercise reasonable care.

30. Defendants negligently and/or recklessly breached their duty of care in the following non-exclusive particulars:

    a. Using a kerosene heater in an enclosed area;

    b. Using a kerosene heater too close to combustibles;

  c. Using improper fuel, namely gasoline, to fuel the kerosene heater at issue;

  d. Operating the kerosene heater counter to proper fire and safety standards;

  e. Spreading the fire by attempting to move the kerosene heater from the area of initial fire rather than attempting to extinguish the fire or call for assistance; and

  f. Such other acts or omissions constituting carelessness, negligence, gross negligence, wantonness and reckless disregard of safety as may appear during the course of discovery procedures or which may be adduced at trial of this case.

31. These breaches of duty were the direct and proximate causes of the fire that occurred on November 13, 2019, and, by extension, the damages sought for here by Plaintiff ARIC.

32. Pursuant to its right of subrogation as set forth above, to the extent of its payment to Brazzel, ARIC has sustained damages and is subrogated to all the rights of Brazzel against the defendants.

  WHEREFORE, Plaintiff ARIC demands judgment in its favor against the defendants in an amount equal to or above $241,972.17 plus interests, costs and such other and further relief this Court deems proper.

### Jury Demand

Plaintiff demands a jury trial on all issues triable of right to a jury of twelve.

Respectfully submitted,

The Plaintiff,
**AMERICAN RELIABLE**
**INSURANCE COMPANY,**

By Its Attorneys,

/s/ Fetlework Balite-Panelo
Stephen W. Elliot, BPR # 20062
Fetlework Balite-Panelo, BPR# 024070
Howell & Fisher, PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203
Direct Line: 615-921-5224
Facsimile: 615-244-3518
Email: selliott@howell-fisher.com
       fbalite-panelo@howell-fisher.com


Guillermo (Will) Sylianteng
WES Litigation Group LLC
196 W. Ashland St.
Doylestown, PA 18901
(267)884-0725
wes@weslitigation.com

IN THE MATTER OF THE ESTATE OF )
JOSHUA MICHAEL PEREZ, DECEASED. )   NO. 2020-PR-136

## ORDER APPOINTING ADMINISTRATOR AD LITEM

This cause came to be heard upon the Petition of American Reliable Insurance Company for the appointment of an Administrator Ad Litem of the estate of Joshua Michael Perez, upon the statements of counsel and upon the entire record in this cause, from all of which it appears to the Court that Joshua Michael Perez died on November 12, 2019 in Dickson County, Tennessee at which time he was resident of Dickson County, Tennessee; and it further appearing to the Court that there has been no administration of his estate in this Court or any other Court; and it further appearing to the Court that the surviving mother of the deceased who has priority to qualify as Administrator Ad Litem is unwilling to serve as Administrator ad Litem; and it further appearing that Petitioner has a claim for damages arising in tort against the estate of the deceased Joshua Michael Perez which it desires to pursue and it is necessary that an Administrator Ad Litem be appointed for the sole purpose of serving as a nominal party to such legal cause of action; and it further appearing that this Court has inherent jurisdiction to appoint an Administrator Ad Litem under Tenn. Code Ann. § 30-1-109 for such a limited purpose.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that David Brogdon, a member of the bar of this Court, be and is hereby appointed Administrator Ad Litem of the estate of Joshua Michael Perez, deceased. The sole purpose of the Administrator Ad Litem is to serve as a nominal party to a tort action to be prosecuted by Petitioner. The Administrator Ad Litem is not

**EXHIBIT A**

1

authorized or required to marshal the assets of the decedent or take ay other action in this estate and therefore, may serve without a requirement of a bond and no notice shall be filed with the Commissioner of Revenue, no Notice of Creditors will be given and no Letters of Administration will issue.

ENTER this 11th day of January 2021.

_____
JUDGE Daniel S. Wolfe

SUBMITTED FOR ENTRY:

HOWELL & FISHER, PLLC

By: /s/ Balite-Panelo
Stephen W. Elliott, BPR #20062
Fetlework Balite-Panelo, BPR #24070
3310 West End Avenue, Suite 550
Nashville, TN 37203
Ph. (615) 921-5224
selliott@howell-fisher.com
fbalite-panelo@howell-fisher.com
Attorneys For Petitioner

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by first-class U.S. Mail, postage prepaid, upon David Brogdon, Esq., 230 N. Main St., Dickson, TN 37055 and Laurie Addington, 104 Villa Circle, Dickson, TN 37055 on this the 4th day of January, 2021.

_____
Fetlework Balite-Panelo

2

## DWELLING LEASE

_Billy W. Brazzell_ (hereinafter called the "Lessor") in consideration of the rental herein reserved, of the covenants and agreements hereinafter expressed, and of the representations and statements made by _Jeffery Pimer_ ("Lessee") as set forth in this signed application, hereby leases to the Lessee and the Lessee hereby hires and takes, at the rental hereinafter, specified, the premises located at _312 West Railroad St. Dickson, TN 37055_ to be used and occupied by the Lessee solely as a private dwelling for the Lessee and family.

Section 1. TERM OF LEASE AND RENTAL PAYMENTS. The term of this Lease shall be for two (2) years, which term shall commence on the _9th_ day of _June_, _2005_, and shall terminate at midnight on the _8th_ day of _June_, _2007_.

At the end of two (2) years, this lease shall be automatically renewed for successive terms of one month. This time to be used for renewal and negotiation of new lease contract.

A rental payment of $_900.00_ shall be paid in advance for the period beginning _6-9-05_, and ending at midnight on _6-30-05_, . Thereafter, monthly rent of $_700.00_ shall be due and payable in advance on the _1st_ day of each month beginning _July 1 2005_, .

In the event rent is not paid in full by the close of business on the _7th_ day of the month after the due date, a late charge of $25.00 will be added to the account as part of Lessee's current bill.

In the event Lessor incurs any expense in enforcing or protecting its right under this dwelling lease, including court costs and/or attorney's fees or charges, as a result of any action by Lessee, whether or not such action be a default hereunder, all such payable by Lessee to Lessor in addition to any other sums due from lessee under this dwelling lease.

Section 2. CIVIL RIGHTS. The Lessor shall not discriminate against the Lessee in the provision of services, or in any other manner, on the grounds of race, color, creed, religion, sex, or national origin.

_Claim # R19236992_

**EXHIBIT**

_B_

Section 3. SECURITY DEPOSIT. Lessee agrees to $_____ Dollars as a Security Deposit to be used by Management at the termination of this Lease toward reimbursement of the cost of repairing any intentional or negligent damages to the dwelling unit caused by Lessee, his/her family, dependents, or Lessee's guests, and any rent or other charge owed by the Lessee. Payment of the Security Deposit is to be made upon execution of this Lease.

Section 4. UTILITIES. Water will be furnished by the Lessee. Lessee agrees to maintain heat to the dwelling unit sufficient to prevent freezing or piped water. If for any reason, Lessee is unable to maintain sufficient heat, he shall immediately notify Lessor. Lessee will be charged for any damages resulting from his failure to maintain sufficient heat or to notify Lessor.

Section 5. OBLIGATIONS OF LESSEE.

- A. Not to assign the Lease or to sublease the premises;

- B. Not to provide accommodations for boarders or lodgers without the written consent of Lessor;

- C. To use the premises solely as a private dwelling for the Lessee and the Lessee's household as identified in the Lease, and not to use or permit its use for any other purpose;

- D. To comply with all obligations imposed by applicable provisions of building and housing codes materially affecting health and safety;

- E. To keep the premises and such other areas as may be assigned to Lessee for his/her exclusive use in a clean and safe condition;

- F. To dispose of all ashes, garbage, rubbish, and other waste from the premises in a sanitary and safe manner;

- G. To use only in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities;

- H. To refrain from, and to cause his household and guests to refrain from destroying, defacing, damaging, or removing any part of the premises;

*Claim # R19236992*

I.  To pay reasonable charges (other than for normal wear and tear) for repair of damages to the premises;

J.  To conduct himself/herself and cause other persons who are on the premises with his consent to conduct themselves in a manner which will not disturb his/her neighbor's peaceful enjoyment of their accommodations;

K.  To refrain from illegal or other activity which impairs the physical or social environment of the dwelling.

L.  Not to display any signs whatsoever, and not to use tacks, nails, screws or any fasteners on any part of the premises except in a manner prescribed by the Lessor;

M.  Not to keep or allow dogs or cats on the premises, and not to keep or allow any other animals or pets on the premises without prior approval of Lessor;

N.  To notify Lessor promptly of known need of repairs to his/her dwelling unit, and of known unsafe conditions in the common areas and grounds which may lead to damage or injury;

O.  To notify Lessor on or before any anticipated extended absence from the premises in excess of seven (7) days;

P.  To park automobiles and other motorized vehicles in designated parking areas only; not to display vehicles for sale; not to grease, change oil, make repairs to such vehicles except where necessitated by emergency; not to park motorized vehicles in an inoperative condition on the premises. (Abandoned automobiles will be treated in accordance with applicable State Law.)

Section 6.  OBLIGATIONS OF LESSOR.

A.  To maintain the premises and the dwelling in decent, and sanitary condition;
B.  To make necessary repairs to the premises;
C.  To maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances, supplied by the Lessor.

*Claim # R19236992*

Section 7. LESSEE MAINTENANCE. Lessee and Lessor agree that the Lessee shall perform seasonal maintenance or other maintenance tasks, as permitted by the nature of the design and construction of the dwelling and according to local custom.

Section 8. LESSOR's ACCESS TO PREMISES.

A. The Lessee shall not unreasonably withhold consent to the Lessor to enter into the dwelling unit in order to inspect the premises, make necessary or agreed repairs, alterations, or improvements, supply necessary or agreed actual purchasers, mortagagees, lessees, workmen or contractors.
B. The Lessor may enter the dwelling unit without consent of the Lessee in case of emergency. Emergency means a sudden, generally unexpected occurrence or set of circumstances demanding immediate action.
C. The Lessor shall not abuse the right of access or use it to harass the Lessee.

Section 9. ABANDONMENT OF PREMISES BY LESSEE. The Lessee's unexplained and/or extended absence from the premises for thirty (30) days or more without payment of rent as due shall be prima facie evidence of abandonment. The Lessor is then expressly authorized to enter, remove and store all personal items belonging to Lessee. If Lessee does not claim said personalty within an additional thirty (30) days, Lessor may sell or dispose of said personalty and apply the proceeds of said sale to the unpaid rents, damages, storage fees, sale costs and attorney fees.

Section 10. LEGAL NOTICES. Any notice required hereunder will be sufficient if delivered in writing to Lessee personally, or to an adult member of his/her family resigning in the dwelling unit, or if sent by certified mail, return receipt requested, properly addressed to Lessee, postage prepaid. Notice to Lessor must be in writing and either delivered to Lessor at _1575 Jones Creek Rd Dickson, TN 37055_ or sent by certified mail, properly addressed, postage prepaid.

Claim # R19236992

Section 11.   TERMINATION OF LEASE.

    A. This Lease may be terminated by the Lessor or the Lessee at any time by the giving of written notice, not less than thirty (30) days prior to termination.
    B. Lessee agrees to leave the dwelling unit in a clean and good condition, reasonable wear and tear expected, and to return the keys to Lessor when he/she vacates.
    C. Lessor agrees that the notice of termination to the Lessee shall state reasons for the termination, shall inform the Lessee of his/her right to make such reply as he/she may wish.
    D. At time of lease termination, all charges shall be due and collectible.
    E. Termination notice may be given by either party on any day of the month.

Section 12.   SEVERABILITY.  The rights and obligations of the parties contained in this agreement are in agreement are in addition to and not in limitation of those required by law.  All of the terms and conditions hereing shall be governed by the Tennessee Uniform Residentional Landlord and Tenant Act and other laws of the State of Tennessee.  Should any term or provision of this Lease agreement be held invalid, such shall be severed herefrom and the remainder of this agreement remain enforceable.

Claim # R1923699 2

In Witness Whereof, the parties have executed this Lease Agreement this ___9th___ day of ___June___, ___2005___, at Dickson, Tennessee.

_____        06-09-05
            Lessee                          Date

_____
            Lessee

__Billy W. Brazzell_____        06-09-05
            Lessor                          Date

__Billy W. Brazzell_____
            Lessor

Claim # R19236992