IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| AMERICAN RELIABLE INSURANCE COMPANY a/s/o BILL BRAZZEL, <br><br> Plaintiff, <br><br> v. <br><br> LAURIE ADDINGTON, and DAVID BROGDON, ESQ., as ADMINISTRATOR AD LITEM OF THE ESTATE OF JOSHUA MICHAEL PEREZ, <br><br> Defendants. | No. 3:21-CV-00848 <br> JURY DEMANDED <br> Chief Judge Waverly Crenshaw <br> Magistrate Judge Barbara D. Holmes |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come now the defendants, Laurie Addington and David Brogdon, Esquire, as Administrator Ad Litem of the estate of Joshua Michael Perez (collectively "Defendants"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56, and move this Honorable Court for Summary Judgment against the plaintiff, American Reliable Insurance Company a/s/o Bill Brazzel ("Plaintiff"). References to the Statements of Undisputed Material Facts will be referenced as "SUMF".

### Facts and History

This lawsuit arose after a fire occurred on November 13, 2019, at a rental property located at 312 W. Railroad St. Dickson, Tennessee ("the property"), causing damage to the property. SUMF ¶ 1. Prior to the fire, Bill Brazzel ("Brazzel") entered into a lease with Jeffrey Pimer ("Pimer") to lease the property to "the Lessee and family" ("the Lease") as follows:

## DWELLING LEASE



SUMF ¶ 2. The term "family" was not defined in the Lease. SUMF ¶ 3. The Lease was drafted by Brazzel. SUMF ¶ 4. Pimer introduced Addington and Perez to Brazzel as "my family." SUMF ¶ 5. Brazzel understood that Addington and Perez were living with Pimer as his family. SUMF ¶ 10. While Addington and Perez did not individually sign the Lease, Brazzel was aware for multiple years that they were residing at the property and he never objected to it. SUMF ¶¶ 6, 9. Brazzel never asked Addington and Perez to sign a separate lease agreement. SUMF ¶ 7. Furthermore, Brazzel never had any problems with Addington and Perez living at the property. SUMF ¶ 8.

This lawsuit was filed on November 11, 2021, after Plaintiff's original lawsuit, filed on February 23, 2021, under case number 3:21-cv-00141, was dismissed on the grounds that the "Sutton Doctrine" prevented subrogation against Defendants. However, the Court left the door open for Plaintiff to file a new lawsuit against Defendants because Defendants names were not listed on the Lease. See Am. Reliable Ins. Co. v. Addington, No. 3:21-CV-00141, 2021 WL 4130557, at *4 (M.D. Tenn. Sept. 10, 2021). Based upon the undisputed material facts, it is clear that Defendants were considered part of Pimer's "family" and thus, were lessees under the Lease. As a result, the "Sutton Doctrine" applies to prevent

subrogation against Defendants.

## Law and Argument

Summary judgment is proper where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court must construe all reasonable factual inferences in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

I. **Defendants' Motion should be granted because Defendants are co-tenants under the Lease and thus, Plaintiff's claims are barred under the "Sutton Doctrine".**

Defendants' Motion should be granted because Defendants are co-tenants under the Lease and thus, Plaintiff's claims are barred under the "Sutton Rule." As this Court correctly held previously in this case, the "Sutton Doctrine" applies to bar subrogation against Defendants as co-tenants under the Lease. See Addington, No. 3:21-CV-00141, 2021 WL 4130557, at *4.

Subrogation is an equitable doctrine whose aim is to "plac[e] the burden of bearing the loss where it [o]ught to be." Allstate Ins. Co. v. Watson, 2005 Tenn. App. LEXIS 126,

2005 WL 457846, at *5 (citing Jindra v. Clayton, 247 Neb. 597, 529 N.W.2d 523 (1995)). However, "subrogation is not appropriate in every circumstance; as an equitable doctrine, it is applied only if its application achieves equity under the facts and circumstances of the case at hand." Dattel Family Ltd. P'ship v. Wintz, 250 S.W.3d 883, 887 (Tenn. Ct. App. 2007); see also Home Owners' Loan Corp. v. Sears, Roebuck & Co., 123 Conn. 232, 238, 193 A. 769 (1937) ("subrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality" [internal quotation marks omitted]). Specifically, it would be inequitable to hold that Plaintiff cannot seek subrogation against Pimer but can seek subrogation against Defendants under the facts of this case.

In Dattel, the Tennessee Court of Appeals recognized the "Sutton Rule" which applies to residential leases as follows:

> if the tenant is deemed a co-insured under the landlord's insurance policy, the insurance carrier would be barred from bringing a subrogation action against the tenant to recover for damages to the landlord's insured premises.

Id.; see Tate v. Trialco Scrap, Inc., 745 F. Supp. 458, 467 (M.D. Tenn. 1989). The court held that "equity would demand that a residential tenant be considered an implied co-insured under his landlord's insurance policy unless the landlord and the tenant have agreed otherwise." Id. at 893. The court reasoned:

> A reasonable insurer, which has adjusted its rates based on the nature of the property and the knowledge that the landlord would rent apartment units to tenants, would expect to pay the landlord for damage caused by a fire negligently started by a tenant. Accordingly, as reflected in the *Sutton* approach, all parties involved would reasonably expect a residential tenant to be considered a co-insured under the landlord's insurance policy unless the parties had expressly agreed otherwise.

Id. (internal citations omitted). However, the court noted exceptions to the "Sutton Rule":

> This status is determined by the lease agreement between the parties. The circumstances of the lease transaction must be addressed, and where there is an express agreement to the contrary, a tenant will not be deemed a co-insured, such that a landlord or its property insurer may proceed in subrogation against the tenant.

Id. at 892. Likewise, in Allstate Ins. Co. v. Watson, 2005 Tenn. App. LEXIS 126, at *2 (Ct. App. Feb. 25, 2005), an insurer paid damages caused by a fire and subsequently brought an against the tenant asserting subrogation rights under its policy with the landlord. The Tennessee Court of Appeals focused on whether the insurer had a right to subrogation against the tenant, noting:

> Critical to this holding is the fact that the lease agreement at issue requires neither the landlord nor the tenant to procure insurance on the property. The only mention of insurance is the provision in the lease that "it is agreed that it is the residents' responsibility to insure their property and safeguard against personal loss."

The court relied on the reasonings of other jurisdictions to conclude:

> absent an express agreement to the contrary in a lease, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy, and the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant.

Id., at *19. As this Court previously found, the Lease in effect at the time of the alleged fire was silent as to insurance obligations between Brazzel and Defendants. See Addington, No. 3:21-CV-00141, 2021 WL 4130557, at *4. Since the Lease does not include an express waiver of Defendants' legal status as a co-insured under any property insurance policy issued to Brazzel, Defendants are deemed co-insureds. Therefore, Defendants' Motion should be granted because there are no issues of material fact and Defendants are entitled to judgment under the "Sutton Rule."

Furthermore, the "Sutton Doctrine" should equally apply to Defendants as co-tenants under the Lease as Pimer's "family." "The Sutton rule recognizes the reality that

both the landlord and the tenant have an insurable interest in the rented premises, where the landlord has an ownership interest, and the tenant has a possessory interest." Cmty. Ass'n Underwriters of Am., Inc. v. Kalles, 164 Wash. App. 30, 36, 259 P.3d 1154, 1158 (2011). As the Tennessee Supreme Court explained:

> [T]he *Sutton* rule prevents landlords from engaging in gamesmanship when drafting leases by providing the necessary incentive for them, if they so desire, to place express subrogation provisions in their leases. If such a provision is placed in their lease, tenants will be on notice that they need to purchase liability insurance. If such a provision is not included in their lease, insurers will pass the increased risk along to landlords in the form of higher premiums, and landlords, in turn, will pass along the higher premiums to tenants in the form of increased rent. As the court in *Sutton* did 30 years ago, we acknowledge that this is almost certainly the current commercial reality.

Watson, 2005 WL 457846, at *5.

In this case, equity requires the Sutton Rule to apply and prevent Brazzel, and Plaintiff, from engaging in gamesmanship for drafting a poorly worded lease to only apply to the named tenant "and family", when Defendants had a possessory interest in the property and a reasonable expectation that the Lease applied to them as tenants. Brazzel drafted the Lease and failed to define the term "family." SUMF ¶¶ 3, 4. While Plaintiff will argue that Pimer and Addington were not legally married, that does not change the fact that they functioned as a "family" under the terms of the Lease. The only material facts that matter in this case are as follows:

- Pimer considered Addington and Perez to be his "family." SUMF ¶ 5.

- Brazzel understood Addington and Perez to be Pimer's "family." SUMF ¶ 10.

- Brazzel knew for multiple years that Addington and Perez were residing at the property and never objected to it. SUMF ¶¶ 6, 9.

Again, the fact that Pimer and Addington were not legally married does not change the

fact that the Lease applied to Defendants as Pimer's "family." What does matter is the fact that Brazzel and Pimer entered into the Lease and Brazzel knew that Defendants were residing at the property pursuant to the Lease.

Therefore, the Sutton Rule equally applies to Defendants, as tenants with a possessory interest in the property, and therefore, Plaintiff cannot seek subrogation against Defendants.

**II.     In the alternative, the Lease should be found to be ambiguous and read in favor of Defendants because they functioned as a "family" under the terms of the lease.**

In addition, and/or in the alternative, the Lease should be found to be ambiguous and read in favor of Defendants because they functioned as a "family" under the terms of the Lease.

A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 889-90 (Tenn. 2002). This Court's initial task in construing the Lease at issue is to determine whether the language is ambiguous. Id. at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. Id. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. Id. Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975). Furthermore, "any ambiguity should be construed in favor of the

non-drafting party." Moore & Assocs. Memphis LLC v. Greystone Homeowners Ass'n, No. W2016-00721-COA-R3-CV, 2017 Tenn. App. LEXIS 36, at *13 (Ct. App. Jan. 20, 2017); *See, e.g.,* Crye-Leike v. Carver, 415 S.W.3d 808, 816 (Tenn. Ct. App. 2011) ("Tennessee courts adhere to the general rule that ambiguities in a contract are construed against the drafter"); German v. Ford, 300 S.W.3d 692, 704 (Tenn. Ct. App. 2009) ("doubtful language is construed against the party who drafted the contract"); Ralph v. Pipkin, 183 S.W.3d 362, 367 (Tenn. Ct. App. 2005) ("[w]e generally will construe ambiguous terms against the drafter").

Here, the Lease provided that the property shall be "occupied by the Lessee solely as a private dwelling for the Lessee and family." SUMF ¶ 3. The Lease was drafted by Brazzel, who failed to define the term "family." SUMF ¶¶ 3, 4. Plaintiff's will argue that Defendants do not fall within the plain meaning or legal definition of the word "family" because Defendants were not related to Pimer by blood, marriage or adoption. However, the word "family" can fairly be understood in more ways than one and thus, it is ambiguous. Since the Lease was drafted by Brazzel, the term "family" should be strictly construed against Brazzel and Plaintiff, as subrogee of Brazzel.

The word "family" has been defined as "a group of individuals living under one roof and usually under one head." Webster's Dictionary, FAMILY (11th Ed.); see also, Ballentine's Law Dictionary, FAMILY (LexisNexis 2010)("Primarily, the collective body of persons who live in one house and under one head or management;"); Dodge v. Bos. & P. R. Co., 154 Mass. 299, 301, 28 N.E. 243, 244 (1891)("The word "family" has several meanings. Its primary meaning is the collective body of persons who live in one house and under one head or management. Its secondary meaning is those who are of the same

lineage, or descend from one common progenitor."); The Law Dictionary, HOUSEHOLD (LexisNexis, 2002) ("a group of persons who dwell in the same house and constitute a family"). Moreover, the Tennessee Court of Appeals has explained the broader concept of family:

> Residence in a household contemplates both a relationship to a place and membership in a group. It includes the common types of close relationships, varying greatly in detail, where persons live together as a family in a closely knit group, usually because of close relationship by blood, marriage, or adoption, and deal with each other intimately, informally, and not at arm's length.
>
> Earlier definitions of "household" limited its application to groups of persons living together "under one head." However, the legal significance of *paterfamilias* has given way in modern times to a broader concept of family. The courts cannot force people to live in narrowly defined family patterns. We now recognize that "out of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and satisfactions of a common home." *Moore v. City of E. Cleveland*, 431 U.S. 494, 505, 97 S. Ct. 1932, 1938, 52 L. Ed. 2d 531 (1977). Thus, the prevailing understanding of "household" today does not necessarily require the existence of a family head. For the purposes of this opinion, we, like a majority of jurisdictions, recognize a household as a group or set of persons who dwell together as a family under the same roof.

Nat'l Ins. Ass'n v. Simpson, 155 S.W.3d 134, 139 (Tenn. Ct. App. 2004).

Here, the word "family" is ambiguous because it can fairly be interpreted in more ways than one. Contrary to Plaintiff's argument, the definition of "family" is not so narrow under Tennessee law to only include persons related by blood, marriage, or adoption. Rather, the definition of "family" is broader and includes persons who are living together under the same roof in a romantic relationship. Thus, the only material facts to this controversy is that Defendants and Pimer functioned as a family because the Lease must be given effect to the intention of the parties. As stated above, it is undisputed that Brazzel knew that the Defendants were residing at the property and never objected to it. SUMF

¶¶ 6, 9. More importantly, Pimer introduced Defendants as his "family" to Brazzel and thus, Brazzel understood them to be living as a family at the property. SUMF ¶¶ 5, 10.

As a result, the clear intention of the parties was that the Lease would cover Pimer and his "family", meaning Defendants. Additionally, since the term "family" is ambiguous, it must be construed against the drafter, Brazzel. Therefore, the Court should find that the Lease applies to Defendants as Pimer's "family" and thus, the "Sutton Doctrine" would apply to bar Plaintiff's claims.

**WHEREFORE**, Defendants respectfully move this Court for an Order granting summary judgment on all issues addressed herein in favor of Defendants as a matter of law, and that the case against them be dismissed with prejudice.

Respectfully submitted,

 s/ Hannah J. Leifel_____
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**HANNAH J. LEIFEL**
Registration No. 038632
DIRECT: (615) 630-7722
(615) 256-8787, Ext. 152
hleifel@bkblaw.com
Attorneys for Defendants, Laurie Addington and David Brogdon, Esq., as Administrator Ad Litem of the Estate of Joshua Michael Perez

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of October, 2022, a true and correct copy of the

foregoing was filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. Mail. Parties may access this file through the court's electronic filing system.

Stephen W. Elliott, Esquire
Fetlework S. Balite-Panelo, Esquire
Howell & Fisher PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203

Guillermo (Will) Sylianteng, Esquire
WES Litigation Group LLC
196 West Ashland Street
Doylestown, PA 18901

        _s/ Hannah J. Leifel_____
        **HANNAH J. LEIFEL**