IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| American Reliable Insurance Company a/s/o Bill Brazzel | |
| | CIVIL ACTION NO.: 3:21-cv-00848 |
| Plaintiff, | |
| vs. | |
| Laurie Addington, et al. Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, American Reliable Insurance Company ("ARIC") as subrogee of Bill Brazzel ("Brazzel") by and through undersigned counsel, and requests this Honorable Court deny defendants' Motion for Summary Judgment and in opposition plaintiff submits this Memorandum of Law.

**[For the convenience of the Court, references to Plaintiff's Response to Defendants' Statements of Undisputed Facts and Plaintiff's Additional Undisputed/Disputed Facts will be referenced as PRDSUMF and the exhibits attached to the PRDSUMF will be attached here and referred to in the same manner as they were in the PRDSUMF. In other words, Exhibit "A" to the PRDSUMF is the same document as Exhibit "A" attached hereto]**

## SUMMARY OF PERTINENT FACTS:

This action arises out of a fire which occurred on November 13, 2019 and damaged the property owned by Plaintiff's insured, Bill Brazzel ("Brazzel"), located at 312 Railroad St. Dickson, Tennessee. (Doc. 1). In its Complaint, Plaintiff alleges that the fire was caused by defendants' "misuse of a kerosene heater", *specifically* defendants' use of gasoline instead of kerosene to fuel the heater. (Doc.1 ¶¶22-23). Defendants do not dispute that the fire was caused

1

by the kerosene heater. Moreover, they admit that, on the day of the fire, the "heater was being used with gasoline." (Doc. 15 ¶¶22-23).

On the day of the fire, the Brazzel property was occupied by Jeffrey Pimer ("Pimer"), Laura Addington ("Addington") and Ms. Addington's son Joshua Michael Perez ("Perez"). (Doc.1 ¶12). Notwithstanding, **"Jeffrey Primer" was the sole lessee (*and sole tenant signatory*) listed on the lease**. See Exhibit "B". **Neither Addington nor Perez paid rent to Brazzel** (See Exhibit "A", Deposition Transcript of Bill Brazzel, P. 23, L. 10-17), and **all discussions regarding the property – rent or maintenance – were held solely between Brazzel and Pimer** (See Exhibit "A", P. 14 L. 11 to P.15 L. 2 and P.23 L.6-9).

While Addington and Pimer may have been in a "romantic relationship", they were not, and had never been, married. (Doc.15 ¶13 and see Defendants' Responses to Request for Admissions No. 8, Exhibit "C"). Additionally, Pimer had no legal parental rights or duties concerning Perez (Exhibit "C" No. 9), as Pimer was not related to either Addington or Perez by blood, marriage or adoption (Exhibit "C" No.10).

Furthermore, **the lease at issue pre-dates (and was executed before) the Pimer and Addington/Perez relationship** (Exhibit "A", P.12 L. 8-16 and P. 23 L. 18-22).

**PROCEDURAL HISTORY:**

This matter was originally filed by the Plaintiff[1] against Pimer, Addington and Perez via Complaint on February 23, 2021, and was given a case number of 3:21-cv-00141. An Answer was filed by the 3 defendants (or representatives of their estates) on March 25, 2021.

On April 27, 2021, Defendants filed a Motion for Judgment on the Pleading arguing that the "Sutton Doctrine" shielded them from subrogation. On September 10, 2021, the Court

---

[1] It is relevant to note that the plaintiff and "real party in interest" is American Reliable Insurance Company as subrogee of Bill Brazzel and not Bill Brazzel, who is not a party to this case.

dismissed that case *with prejudice* against Defendant Jeffrey Primer, on the grounds that Sutton prevented subrogation against a tenant, but left the door open for plaintiff to re-file against Addington and Perez, as – *unlike Jeffrey Pimer* - their names were not on the Lease.

> The Court will dismiss the Complaint without prejudice to refiling on a very limited basis. The Pimer Lease does not contain Ms. Addington's name or Mr. Perez's name. (Doc. No. 24-1). The Court's foregoing analysis might change if Ms. Addington and Mr. Perez were not ARIC's tenants subject to the terms of the Pimer Lease on the date of the fire. But the Court must conclude that they were, based on ARIC's own alleged facts. ARIC stipulates that (1) Ms. Addington and Mr. Perez were Mr. Brazzel's tenants at 312 West Railroad Street on the date of the fire (Doc. No. 1 ¶¶ 6–7), (2) the Pimer Lease was "in effect" on that date (Doc. No. 24 at 1), and (3) the Pimer Lease provides for 312 West Railroad Street to be occupied "solely" by Mr. Pimer "and family" (Doc. No. 24-1 at 1). (ARIC also admits in its opposition brief that the Pimer Lease covers Ms. Addington and Mr. Perez, by referring to it as "the lease between plaintiff's insured ... and defendants." (Doc. No. 28 at 1). The Court does not consider the content of that admission as fact for the purposes of its present ruling, because the opposition brief is not part of the pleadings. See Laporte v. City of Nashville, No. 3:18-CV-00282, 2019 WL 845413, at *3 (M.D. Tenn. Feb. 21, 2019).) Dismissal is appropriate because the facts ARIC alleges do not plausibly support a legal claim in view of the Sutton Rule. See Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (pleadings must "render the legal claim plausible, i.e., more than merely possible" to survive dismissal). **But due to the absence of Ms. Addington's name and Mr. Perez's name in the Pimer Lease, the Court will dismiss ARIC's claims against them without prejudice**. Defendants [sic] have no right to refile against Mr. Pimer's estate.
>
> Am. Reliable Ins. Co. v. Addington, 559 F.Supp.3d. 656, fn. 4(M.D. Tenn. 2021) (emphasis added).

Pursuant to the Court's ruling, plaintiff filed an Amended Complaint against Addington and Perez on September 30, 2021. However, that Complaint was stricken per the Court's Order of November 8, 2021 noting that "[Case 3:21-cv-00141] remain[ed] closed. If Plaintiff wishes to

pursue its claim further, it must file *a new action*." (Doc. 41 of Case 3:21-cv-00141) (emphasis added).

Accordingly, Plaintiff filed the instant action against Addington and Perez on November 11, 2021 (Doc 1.), and Defendants filed their Answer on December 7, 2021. (Doc. 15).

**ARGUMENT:**

**SUMMARY JUDGMENT STANDARD:**

Federal Rule of Civil Procedure 56 governs Motions for Summary Judgment. Rule 56(a) states, "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." FRCP 56(a).

As noted by this Court in Crigger v. State Farm Fire & Cas. Co., No. 3:21-CV-00508, 2022 WL 4088071, at *1 (M.D. Tenn. Sept. 6, 2022), the standard for ruling on a motion for summary judgment are as follows: "(1) summary judgment is only appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law; (2) the facts and inferences must be construed in favor of the nonmoving party; (3) the Court does not weigh the evidence, or judge the credibility of witnesses when ruling on the motion; and (4) the mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment." Id. at *1 (internal citations removed).

   **I.   DEFENDANTS ARE NOT TENANTS UNDER THE LEASE AND THEREFORE THE SUTTON RULE DOES NOT APPLY TO THEM. DEFENDANTS' MOTION MUST BE DENIED.**

In Am. Reliable Ins. Co. v. Addington, 559 F.Supp.3d. 656 (M.D. Tenn. 2021), this Court explained the "Sutton Rule" as it applies in Tennessee,

> Under the Sutton Rule, "absent an express agreement to the contrary *in a lease*, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy." Dattel, 250 S.W.3d at 889 (citation and quotation omitted). In those circumstances, "the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant." Id.
>
> The Sutton Rule *prohibits insurers' subrogation actions against tenants whose leases are "silent" as to insurance*. Watson, 2005 WL 457846, at *9. Plainly, a lease silent regarding fire insurance coverage cannot "express[ly]" exclude tenants from that coverage. See Id.
>
> Am. Reliable Ins. Co. v. Addington, 559 F.Supp.3d. 656 at 658-659 (M.D. Tenn. 2021) (emphasis added).

As pointed out by the Court, and uncontested by defendants in their memorandum of law[2], the existence of a "lease" between a tenant and landlord is fundamental to the Sutton Rule analysis; as the terms of the lease or the silence therein is the key to determining the applicability of the Sutton Rule. Id. In fact, the Tennessee Court of Appeals in Travelers Prop. Cas. Co. of Am. v. Terry, 2007 WL 49558, (Tenn. Ct. App. Jan. 5, 2007), specifically noted that *having privity* under a lease is essential to availing yourself of Sutton's protection.

In Travelers, the Court of Appeals held that the tenant of the condominium unit owner, who allegedly caused a fire, *was not protected* by the Sutton Rule from subrogation by the condominium building's insurer, because the unit owner's tenant had no contractual relationship

---

[2] A fair reading of defendants' arguments [pleadings, and prior filings] show that they are *entirely* based and predicated on the Pimer lease and the defenses against subrogation (Sutton) they believe flow from there to them as a "functional' family.

(and thus no privity) with the building owner; tenant's only contractual relationship was with the unit owner.

The Court of Appeals explained that "[u]nder the Sutton rule, 'the parties are [implied] co-insureds [and thus protected from subrogation] because of the reasonable expectations ***they derive from their privity under the lease***.'" Id. at *3 (citing Allstate Ins. Co. v. Watson, 2005 WL 457846, at *4 (citing 6A John A. Appleman & Jean Appleman, Insurance Law and Practice § 4055, at 77-78 (Supp.1991)). ***When a party lacks said privity, Sutton is inapplicable to that party***[3]. Id (emphasis added).

In the instant matter, there is no dispute that:

- Pimer is the only person the lease names as "lessee". See Exhibit "B";

- neither Addington nor Perez are named on the lease. See Exhibit "B";

- there are no other leases that exist concerning the property at issue. See PRDSUMF No. 10 of "Additional Facts" and Defendants' Admissions, Exhibit "C", No. 2;

- the lease specifically prohibited subleasing and/or assignments. See Lease, Exhibit "B" and see PRDSUMF No. 4 of "Additional Facts";

- with respect to his 312 W. Railroad property, Brazzel did not agree to (or approve) any sublease or assignment of the Pimer lease. See Exhibit "A", P. 21 L. 23 to P. 22 L. 20 and see PRDSUMF No. 5 of "Additional Facts";

- neither Addington nor Perez paid rent to Brazzel (See Exhibit "A", Deposition Transcript of Bill Brazzel, P. 23, L. 10-17);

- neither Addington nor Perez participated in discussions regarding the property – rent or maintenance – with Brazzel; all such conversations were held exclusively between Brazzel and Pimer (See Exhibit "A", P. 14 L. 11 to P.15 L. 2 and P.23 L.6-9); and

---

[3] While the issue was not before them, the Travelers Court did imply that had the tortfeasor been the Unit Owner rather than Unit Owner's tenant, Sutton would likely have applied to bar Travelers claim against the Unit Owner. Id. **In this case the unit owner would be akin (in relation to the insured) to Jeffrey Pimer and Addington/Perez would be, at best, akin to the tenant of the unit owner.**

- At the time the lease was executed between Brazzel and Pimer, neither Addington nor Perez lived with Pimer. See Exhibit "A", P.12 L. 8-16 and P. 23 L. 18-22 and see PRDSUMF No. 6 of "Additional Facts".

Accordingly, even under the most liberal reading of the lease at issue, it is clear that: 1) neither Addington nor Perez are lessees (tenants)[4]; 2) neither defendant was contemplated at the signing of the lease (as Pimer signed the lease and moved into the property alone); and 3) there were no subsequent dealings between defendants and Brazzel which would give rise to a separate basis for the establishment of a landlord-tenant relationship between them and Brazzel[5].

As such, there is no basis either on the face of the lease or in any dealings between the defendants and Brazzel to establish the requisite privity required for defendants to be shielded by Sutton[6]. This is clearly recognized as truth by the defendants as their argument relies solely on characterizing their relationship with Pimer as a "functional family", in an attempt to insert themselves into a lease that pre-dates the formation of their alleged "functional family".

The lease reads, plainly and clearly, that the sole lessee is Jeffery Pimer. While the lease does state that lessee may use the property as a private dwelling "for the Lessee and family," it is a stretch to argue that those words give rise to privity in the lease between Brazzel and Addington/Perez[7], *two individuals not related to the lessee Jeffery Pimer*. In fact, defendants acknowledge, though tacitly in their pleadings, instant motion and related memorandum of law, that they are not a "family" as contemplated in the lease, in that they constantly qualify their status.

---

[4] As noted, only Jeffrey Pimer is listed as the "lessee".

[5] There is not a single indicia of a landlord-tenant relationship between the Defendants and Brazzel (they did not pay rent to Brazzel; they did not discuss or negotiate rent with Brazzel; and they did not even communicate with Brazzel regarding the property's maintenance or repair).

[6] Brazzel's failure to object to them living there does not give rise to a landlord-tenant relationship when no other indicia of said relationship exists. At best, this red herring, demonstrates Brazzel not objecting to Pimer's at-will guests (see below).

[7] Surely, defendants are not arguing that Brazzel could have collected back rent from them, despite not being named in the lease, had Pimer defaulted (privity would work in both directions).

Defendants use the terms, "*considered them family*" or "*functioned as a family*", throughout their filings. Clearly, a qualification is unnecessary if you fit the plain meaning of the word.

Instead, defendants hang their proverbial hats on the concept that a "functional family" should have same rights as family by relation (blood, marriage or adoption). However, this argument must fail because it is entirely based on the *unilateral* manifestation (and mental alteration) of contractual rights by Jeffery Pimer – rights which would be binding on Addington, Perez, Brazzel *and* the Plaintiff American Reliable Insurance Company, that can apparently be given and taken away based on his feelings alone[8].

If you follow defendants' argument to its logical conclusion, assuming *arguendo*, that a declaration of a feeling of familial affinity towards another could unilaterally manifest contractual rights under a lease (or elsewhere), then Pimer could have – in an argument with his girlfriend (Addington) or her son (Perez) – just as easily *unilaterally* eliminated those rights on a whim[9]. Defendants' status as tenants would literally be temporally based on Pimer's feeling for them on a particular day, hour, or minute. Such a system would create a set of legal rights subject to the fickleness of a single man (counter that with legal security/certainty of familial relationships based on blood relation or the legally binding contractual safeguards of marriage or adoption), and therefore cannot stand – especially in a state that has rejected the idea of "common-law" marriage. Smith v. N. Memphis Sav. Bank, 89 S.W. 392, 393 (Tenn.1905).

---

[8] As noted by defendants in their memorandum, they believe the only material facts that matter are: 1) that Pimer "considered" Addington and Perez to be "family"; 2) that Brazzel mistakenly understood (**because of a statement made by Pimer**) that they were family; and 3) that Brazzel had not objected to them living at the property. As noted above, the 3rd point is a red-herring with respect to privity in contract, while the other two demonstrate that defendants' entire argument is predicated on Pimer's "feelings" at any given moment.

[9] As Pimer and Addington were not married, unlike divorce there is no formal or legal necessities to uncouple during a breakup between a boyfriend and a girlfriend; it need not be said, but a breakup between non-married couples can (and often is) done unilaterally and without warning.

Contrary to defendants' proposed list of the "only material facts that matter in this case" (P. 8 of Defendants' Memorandum and fn.8 above), the following facts – *not based on the feelings of Jeffery Pimer* – are far more relevant.

- While Addington and Pimer may have been in a "romantic relationship", they were not, and had never been, married. (Doc.15 ¶13 and see Defendants' Responses to Request for Admissions No. 8, Exhibit "C");

- Pimer had no legal parental rights over Perez (Exhibit "C" No. 9);

- Pimer was not, and was never, related to either Addington or Perez by blood, marriage or adoption (Exhibit "C" No.10); and

- Neither Addington nor Perez are eligible beneficiaries to the Estate of Pimer (See Exhibit "C" No.18)

Based on these facts, a fair reading of the lease, and the relationship (or lack thereof) between Addington/Perez **and Brazzel** (*for the purposes of privity under the lease this relationship is far more important than their relationship with Pimer*), Addington and Perez are not Brazzel's tenants and therefore are not protected by Sutton. At best, they are tenants/guests of Pimer, and if so, Travelers Prop. Cas. Co. of Am. v. Terry, *supra*, would apply to allow subrogation against them; Addington/Perez would be akin to the tenant of the condo unit owner, who the Court held *was not* protected against the subrogation action as they did not have privity with the insurer's insured, the building owner[10] - in this case Brazzel.

## II. THE TERM "FAMILY" IN THE LEASE IS NOT AMBIGUOUS AND THEREFORE ITS PLAIN MEANING CONTROLS AND DEFENDANTS ARE NOT TENANTS UNDER THE LEASE

---

[10] In the instant matter, there is no privity between Addington/Perez and Brazzel (building owner) even if it is deemed that there was a sub-tenancy between Addington/Perez and Pimer. **The lack of privity with Brazzel controls.**

The lease at issue states that Jeffery Pimer, lessee, has the right under the lease to use the property "as a private dwelling for the Lessee *and family*". As defendants have no other avenue to find privity under the lease, the defendants argue that the word "family" is ambiguous and therefore should apply to them as they "functioned" like a family[11]. While the argument is creative, the word "family", as used in this lease, is neither unclear nor ambiguous.

In <u>Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.</u>, 395 S.W.3d 653, 659 (Tenn. 2013) the Supreme Court of Tennessee noted that, "The literal meaning of the contract language controls if the language is clear and unambiguous." As the issue here is the conveyance of "possessory" rights to property, *as duly noted by the defendants in their memorandum*, the meaning of the word should be viewed in that context. Tennessee's intestate succession laws, T.C.A. §§ 31-1-101 to 31-7-117, which determine the division of property when an individual – like Pimer - dies intestate, bar Addington and Perez from taking from Pimer's Estate regardless of whether they "functioned as a family" or not, because they were not related by blood, marriage, adoption or any other criteria which would give them the rights to take from the Estate.

While, admittedly, the clarity of the term "family" would be of greater issue if the dispute at hand were "to what degree of family" (e.g., immediate family vs. 3rd, 4th or 5th cousins) was contemplated by the lease, but that issue is not present here, as neither Addington nor Perez are "related" to Jeffery Pimer in anyway which would grant them legal rights. As the term "family" in the lease is not ambiguous, and defendants do not fit within the rubric of "family", defendants' motion must fail and plaintiff's subrogation suit should be allowed to advance against them.

### III. DEFENDANTS' MOTION SHOULD BE DENIED AS GRANTING IT WOULD BE AGAINST PUBLIC POLICY AND SET A DANGEROUS PRECEDENT

---

[11] The only evidence for this "functional family" is Pimer's single statement to Brazzel that he considered them family.

10
Case 3:21-cv-00848    Document 36    Filed 11/08/22    Page 10 of 17 PageID #: 242

Defendants' entire argument that they should be deemed and legitimized by this Court as a "family" is predicated on a single statement (*more specifically, four words*) made by Jeffery Pimer, *in passing*, to his landlord Bill Brazzel (see generally defendants' motion and memorandum of law) while they were both sitting on his porch[12].

> I -- I can't answer that. I don't know. I really don't. The whole thing evolves around one day he calls me to come over, sitting on the front porch. And these people [Addington and Perez] come driving up in a car and get out and bring in groceries. And I look at him. He [Pimer] said: "*This is my family*." I never -- I didn't question what he meant by -- you just -- you don't do stuff like that. And the only thing I was interested in was that I still had a contract with Mr. Pimer. And they kept the place spotless. I never had any issues, not one with those people. And that's my only interest.

Exhibit "A", P. 25 L.19 to P.26 L.7 (emphasis added).

Based on those four words alone, defendants would have this Court deem them a "family" with the legal "possessory" rights of tenants under the Pimer lease. Defendants present no other evidence that Pimer and Addington/Perez functioned as "family" nor do they even attempt to describe how their relationship is any different from the relationship of any other cohabiting individuals. In fact, the evidence that has been produced would tend to lend credence to the fact that Addington and Pimer's relationship did not rise to a level beyond that of boyfriend-girlfriend.

While it can be assumed that they made an affirmative choice to live together, *there was no permanence in that relationship or any attempt at permanence*. The couple did not own a joint bank account and had separate finances (See Exhibit "C", No. 7). Moreover, defendants present no evidence that Addington and Pimer were engaged or even planned to get engaged. As such, even an uncoupling (breakup) would have been no less complicated than Pimer ending the

---

[12] As noted above, this occurred after the execution of the Pimer lease.

relationship and telling Addington and her son to leave his house. Pimer had no legal responsibility for Perez (See Exhibit "C", No. 9), so even that relationship could have easily ended at any point by Pimer asking him to leave. While it is not plaintiff's intent to be callous, or to downplay the affection these individuals may have had for each other, the point has to be made that said affection <u>alone</u> cannot be the basis for the legal "possessory" right defendants are advocating for; especially, as pointed out above, in a state that does not recognize common-law marriages. <u>Smith v. N. Memphis Sav. Bank</u>, 89 S.W. 392, 393 (Tenn.1905).

Should the Court grant defendants' motion, this case would set a dangerous precedent moving forward for both landlords and tenants (and possibly beyond this area of the law). It would stand for the proposition that a lessee could, unilaterally (without the consent of the other contracting party), alter a contract to add or delete individuals based on his or her affection – *at any given moment* – for another individual or group of individuals. For instance, assuming *arguendo,* that such a statement could give rise to privity and therefore possessory interests under a lease such as the one at issue, this could be used to justify the existence of tenant rights of a sorority "sister", best friend, or the woman who is "like an aunt to you". Conversely, it could also make those same individuals unwittingly liable, under a lease they did not read or sign, to the landlord under the same privity (which, arguably, would flow in both directions). Surely a result like that could not be allowed to stand.

WHEREFORE, Plaintiff respectfully requests this Court deny defendants' Motion for Summary Judgment and declare that the Sutton Rule does not apply to them.

Respectfully submitted,

<u>The Plaintiff,</u>
**<u>AMERICAN RELIABLE</u>**
**<u>INSURANCE COMPANY,</u>**

By Its Attorneys,

<u>/s/ *Will Sylianteng*</u>
Guillermo (Will) Sylianteng
WES Litigation Group LLC
196 W. Ashland St.
Doylestown, PA 18901
(267)884-0725
wes@weslitigation.com

Stephen W. Elliott
Fetlework S. Balite-Panelo
Howell& Fisher PLLC
3310 West End Ave., Suite 550
Nashville, TN 37203

# **EXHIBIT A**

# **EXHIBIT B**

# **EXHIBIT C**

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 8, 2022, a copy of the foregoing Response to Defendants' Motion for Summary Judgment was filed electronically. Notice and a copy of the filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this file through the Court's electronic filing system.

Parks T. Chastain, Esq.
Hannah J. Leifel, Esq.
Brewer, Krause, Brooks & Chastain, PLLC
545 Mainstream Drive, Suite 101
Nashville, TN 37228
pchastain@bkblaw.com
hleifel@bkblaw.com
Attorneys for Defendants

/s/ *Will Sylianteng*
Guillermo (Will) Sylianteng
WES Litigation Group LLC