UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMERICAN RELIABLE INSURANCE COMPANY a/s/o BILL BRAZZEL, | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) No. 3:21-CV-00848 ) |
| LAURIE ADDINGTON, and DAVID BROGDON, ESQ., ADMINISTRATOR AD LITEM OF THE ESTATE OF JOSHUA MICHAEL PEREZ, | ) ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM OPINION

"A 'family' can refer to a 'group of individuals living under one roof and usually under one head[,]' or 'the basic unit in society traditionally consisting of two parents rearing their children[,]' or 'a group of persons of common ancestry[,]' or 'a group of people united by certain convictions or a common affiliation[.]'" Wheaton v. McCarthy, 800 F.3d 282, 287 (6th Cir. 2015) (quoting MERRIAM-WEBSTER DICTIONARY (online ed.)). "The former two definitions – in short, persons living under one roof, or 'the basic unit in society' – are admittedly unclear at the margins." Id. And, it is precisely because "family" can be defined in different ways with room at the margins that Defendants are entitled to summary judgment on this subrogation action brought by American Reliable Insurance Company ("ARIC").

**I.**

Bill Brazzel owned rental property in Dickson, Tennessee. The property was insured for fire damage by ARIC.

Brazzel rented the property to Jeffrey Pimer pursuant to a lease Brazzel drafted (or found) that provided:

> <u>Billy W. Brazzel</u> (hereinafter called the "Lessor") in consideration of the rental herein reserved, of the covenants and agreements hereinafter expressed and of the representations and statements made by <u>Jeffery Pimer</u> ("Lessee") as set forth in this signed application, hereby leases to the Lessee and the Lessee hereby hires and takes, at the rental hereinafter, specified, the premises located at <u>312 West Railroad St. Dickson, TN 37055</u> to be used and occupied by the Lessee solely as a private dwelling for the Lessee and family.

(Doc. No. 35-2 at 1). The term "family" is not defined in the lease.

The lease also contained the following "Obligations of Lessee," among others:

> A. Not to assign the Lease or to sublease premises;
>
> B. Not to provide accommodations for boarders or lodgers without the written consent of Lessor[.]

(<u>Id.</u> at 2). The lease was never assigned, nor was the property sublet.

At some point after the lease was executed on June 9, 2005, Laurie Addington and her adult son, Joshua Perez, moved into the residence. Although Addington and Pimer were not married, Pimer referred to Addington and Perez as his "family" and introduced them as such to Brazzel.

With regard to rental payments and upkeep on the property, Brazzel dealt exclusively with Pimer. Pimer paid the rent out of his personal bank account, and neither Addington nor Perez paid rent to Brazzel. Nevertheless, Brazzel knew for several years that Addington and her son were also living on the property, and he never had an issue with it. Nor did he ever require them to sign a separate lease agreement.

On November 13, 2019, a fire occurred causing damage to the rental property. ARIC alleges in its Complaint that the fire was the result of the misuse of a kerosene heater by Addington and Perez. (Doc. No. 1, Cmp. ¶ 22). More specifically, ARIC alleges that gasoline was used in

the heater, causing it to malfunction and catch fire. The fire spread when Addington and Perez attempted to remove the heater from the residence.

The fire caused $241,972.17 in damages. ARIC paid Brazzel's claim and now sues Addington and Perez for negligence as subrogee of Brazzel. Defendants move for summary judgment on the grounds that the "Sutton Rule" bars ARIC's claim.

## II.

This is not the first time the Court has considered ARIC's subrogation claim against Addington and Perez. In an earlier case, the Court found judgment on the pleadings to be required by the "Sutton Rule," writing:

> To determine whether ARIC's subrogation claim survives dismissal, the Court must apply the Sutton Rule. See Dattel Fam. Ltd. P'ship v. Wintz, 250 S.W.3d 883, 888, 894 (Tenn. Ct. App. 2007) (holding the approach to subrogation actions "frequently referred to as the Sutton Rule," based on the decision in Sutton v. Jondahl, 532 P.2d 478 (Okla. Div. App. 1975), applies in Tennessee); Allstate Ins. Co. v. Watson, No. M2003-01574-COA-R3CV, 2005 WL 457846, at *7 (Tenn. Ct. App. Feb. 25, 2005) (same). Under the Sutton Rule, "absent an express agreement to the contrary in a lease, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy." Dattel, 250 S.W.3d at 889 (citation and quotation omitted). In those circumstances, "the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant." Id.
>
> The Sutton Rule prohibits insurers' subrogation actions against tenants whose leases are "silent" as to insurance. Watson, 2005 WL 457846, at *9. Plainly, a lease silent regarding fire insurance coverage cannot "express[ly]" exclude tenants from that coverage. See id.

Am. Reliable Ins. Co. v. Addington, 559 F. Supp. 3d 656, 658–59 (M.D. Tenn. 2021). Because ARIC admitted the lease was "completely silent as to insurance," the Court found that the "express agreement exception" to the Sutton Rule did not apply, meaning that "Defendants [we]re coinsured

3

under Mr. Brazzel's fire insurance policy with ARIC, which cannot sue Defendants in subrogation." Id. at 659.

The Court did not entirely close the window on a potential claim by ARIC, however, stating:

> The Court will dismiss the Complaint without prejudice to refiling on a very limited basis. The Pimer Lease does not contain Ms. Addington's name or Mr. Perez's name. The Court's foregoing analysis might change if Ms. Addington and Mr. Perez were not [Brazzel's] tenants subject to the terms of the Pimer Lease on the date of the fire.

Id. at 660, n.4. The Court could not make any such findings on the pleadings. Id.

### III.

ARIC took advantage of the opening by refiling suit and conducting discovery. It now argues that, "[a]s neither defendant, Addington or Perez, was a tenant on the lease at issue, which was between Pimer and Brazzel only, neither defendant can avail themselves of the Sutton Rule to avoid liability for [the] fire." (Doc. No. 34 at 2). Defendants counter that they were Brazzel's tenants because the lease provided that it was to be used solely "as a private dwelling for the Lessee and family," and the word "family" would include them. ARIC insists it does not: "To the contrary, the word "family" is clear and unambiguous, *especially when it comes to the passing on of property rights (sans Will)*; neither Addington nor Perez are eligible to take pursuant to Tennessee's intestate succession laws, T.C.A. §§ 31-1-101 to 31-7-117, from Pimer's Estate regardless of whether he considered them 'family.'" (Id. at 5) (emphasis in original).

This is not a Will contest and, as noted at the outset, the term 'family" is not susceptible to a single definition. Other definitions exist. For example, a City of Murfreesboro's zoning

4

ordinance defines "family" as "(a) an individual or two or more persons related by blood, marriage or adoption, maintaining a common household in a dwelling unit; or (b) a group of not more than four persons who are not related by blood, marriage, or adoption living together as a common household dwelling unit, or (c) a group of not more than eight unrelated persons with disabilities, as defined by applicable federal law[.]" Brumfield v. City of Murfreesboro, No. M201601569COAR3CV, 2018 WL 5618117, at *4 (Tenn. Ct. App. Oct. 30, 2018) (emphasis added). Defining a "family" in different ways is not a new phenomenon, either. Almost 90 years ago, the Tennessee Supreme Court observed:

> In common parlance a family sometimes includes servants and others than wife or children living under the same roof with the *pater familias*, but a single person, who has never married, having merely servants in his home, cannot be said to be a head of a family. See numerous cases cited in note, 29 C. J. p. 798. Standard Dictionary defines "family" as (1) "a group of persons consisting of father, mother and children"; or (2) "the collection of persons forming a domestic household," *etc*.

Whitfield v. People's Union Bank & Tr. Co., 73 S.W.2d 690, 691 (1934); see also Nat'l Ins. Ass'n v. Simpson, 155 S.W.3d 134, 139 (Tenn. Ct. App. 2004) ("[W]e, like a majority of jurisdictions recognize a household as a group or set of persons who dwell together as a family under the same roof.").

"The legal effect of the terms of a lease are governed by the general rules of contract construction." Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 889 (Tenn. 2002). "The 'cardinal rule' of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal principles." Frizzell Constr. Co. v. Gatlinburg, L.L.C., 9 S.W.3d 79, 85 (Tenn.1999). In construing a contract, a court's "initial task . . . is to determine whether the language of the contract is ambiguous." Planters Gin, 78 S.W.3d

at 890. If so, the ambiguity is construed against the drafter. Town of Smyrna v. Mun. Gas Auth. of Georgia, 723 F.3d 640, 646 (6th Cir. 2013); Ralph v. Pipkin, 183 S.W.3d 362, 367 (Tenn. Ct. App.2005). However, "[a] strained construction may not be placed on the language used to find ambiguity where none exists." St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co., 725 S.W.2d 948, 951 (Tenn.Ct.App.1986).

It requires no straining of the lease to conclude that Pimer, Addington, and Perez lived as a family in Brazzel's rental at the time of the fire. Their's was (1) a "collection of persons forming a domestic household," Whitfield, 73 S.W.2d at 691; (2) a "group of not more than four persons who [were] not related by blood, marriage, or adoption living together as a common household dwelling unit," Brumfield, 2018 WL 5618117, at *4; and/or (3) a "group of individuals living under one roof," Wheaton, 800 F.3d at 287. Because they could readily be defined as a "family," the Sutton Rule applies and summary judgment in their favor is warranted.

## IV.

In finding summary judgment appropriate, the Court is nonplussed by ARIC's claim that havoc would ensue were it to rule in Defendants' favor. ARIC argues that "this case will have far reaching consequences both in terms of landlord tenant law as well as other areas of contract law" and that:

> If you follow defendants' argument to its logical conclusion, assuming arguendo, that a declaration of a feeling of familial affinity towards another could unilaterally manifest legal rights under a lease (or elsewhere), then Pimer could have – in an argument with his girlfriend (Addington) or her son (Perez) – just as easily unilaterally eliminated those rights on a whim; making the defendants' status as tenants temporally based on Pimer's feeling for them on a particular day, hour, or minute. Such a system would create a set of legal rights subject to the fickleness of

> a single man (counter that with legal security/certainty of familial relationships based on blood relation or the legally binding contractual safeguards of marriage or adoption).

(Doc. No. 34 at 4, n.2).

It was not a declaration of familial affinity that unilaterally manifested a right under the lease. Rather, it was the terms of the lease itself and Brazzel's knowledge and consent that conferred protection under the Sutton Rule. Finding that Addington and Perez were co-tenants under the lease is in keeping with contract construction relating to ambiguity under Tennessee law and does not set a dangerous precedent. What it does is reinforce what the Tennessee Court of Appeals has already acknowledged:

> "[T]he Sutton rule prevents landlords from engaging in gamesmanship when drafting leases by providing the necessary incentive for them, if they so desire, to place express subrogation provisions in their leases. If such a provision is placed in their lease, tenants will be on notice that they need to purchase liability insurance. If such a provision is not included in their lease, insurers will pass the increased risk along to landlords in the form of higher premiums, and landlords, in turn, will pass along the higher premiums to tenants in the form of increased rent. As the court in Sutton did 30 years ago, we acknowledge that this is almost certainly the current commercial reality."

Allstate Ins. Co. v. Watson, No. M2003-01574-COA-R3CV, 2005 WL 457846, at *5 (Tenn. Ct. App. Feb. 25, 2005) (quoting Tri-Par Investments, LLC v. Sousa, 680 N.W.2d 190 (Neb. 2004)).

Moreover, ARIC's argument ignores the origins of the Sutton Rule. In Sutton, John Jondahl "rented from the Suttons a home for his family in Ponca City, Oklahoma." 532 P.3d at 479. Father Jondahl gave his son an inexpensive chemistry set one Christmas, and the 10-year old boy later tried to heat some of the chemicals in the set with an electric popcorn popper. This experiment resulted in the bedroom curtains catching fire and causing damage to the residence. The Sutton's fire insurance company paid their claim for damages and then sued both father and

7

son for negligence. The Oklahoma Court of Appeals held that there was "no subrogational rights against the tenant of [the insurer's] policyholder," writing:

> The principle of subrogation was begotten of a union between equity and her beloved—the natural justice of placing the burden of bearing a loss where it ought to be. Being so sired this child of justice is without the form of a rigid rule of law. On the contrary it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability. To some facts subrogation will adhere – to others it will not.
>
> Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest. Here the landlords (Suttons) purchased the fire insurance from Central Mutual Insurance Company to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.
>
> The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting.

Id. at 481–82. In short, "[b]asic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary." Id. at 482.

Here, Defendants did not rent the home from Brazzel, just as the son did not rent the home from the Suttons. Defendants did not sign the lease and did not pay the rent, just as Jondahl's son did neither such thing. Rather, the home was rented by Pimer to be used "as a private dwelling

8

by [him] and family," just as the father in Sutton rented the home "for his family." That the father and son in Sutton may have been family by blood was not dispositive (or even discussed) in Sutton, and an accepted definition of family comfortably encompasses the relationship of Pimer, Addington and Perez.

ARIC's calamitous vision also ignores the undisputed facts of this case. Brazzel knew that Pimer considered Addington and Perez his family; Brazzel knew that the trio lived together in his rental for several years; and Brazzel never voiced any objection to their living arrangement or them living in his house. True, Brazzel likely could not sue Addington and Perez for back rent (as ARIC also argues), but the Suttons likely could not sue Jondahl junior for back rent either.

ARIC's reliance on Travelers Prop. Cas. Co. of Am. v. Terry, No. M200502035COAR3CV, 2007 WL 49558, at *1 (Tenn. Ct. App. Jan. 5, 2007) is misplaced. There, Travelers insured the building and common areas of Elliston Place Condominiums; the Woods owned a unit in the multi-unit building; and the Woods leased their condo to Terry. After Terry's alleged negligence caused a fire that damaged the building and common areas, Traveler's sued Terry as subrogee of the building's owner (the named insured). The Tennessee Court of Appeals held that, because the building owner did not have any contractual agreement with the Woods' tenant as to the unit, there was no privity of contract. Rather, the privity in Terry was between Travelers and the building's owner, not the unit's owner. There was also "privity of contract and privity of estate between "Terry and the Woods," Id. at 3, n.8, just as there was privity between Brazzel and Pimer.

Furthermore, "the Woods-Terry Rental Agreement specifically provided that Terry 'shall be responsible for damages caused by his/her negligence and that of his/her family or invitees and

9

guests,'" and there was "no justifiable reason" for Terry "to believe he was a co-insured under the Travelers policy." Id. at 4. Here, in contrast, there was no shifting of liability to Pimer or his guests. Brazzel paid premiums to ARIC and collected rent from Pimer in exchange for Pimer and his "family" living in Brazzel's rental, making it justifiable for Addington and Perez to believe their negligence would be covered by Brazzel's policy.

V.

As stated in Sutton, the principle of subrogation has its origins in "basic equity and fundamental justice" and attempts to place "the burden of bearing a loss where it ought to be." 532 P.2d at 482. That burden is rightfully placed on ARIC, which received insurance premiums from Brazzel who in turn collected rent from Pimer for a home for both Pimer and his family. Defendants' Motion for Summary Judgment will be granted.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE